WINSTON REALTY COMPANY, INC., D/B/A WINSTON REALTY, INC., A COR-PORATION v. G.H.G., INC., T/A SNELLING AND SNELLING, A NORTH CARO-LINA CORPORATION

No. 8312SC790

(Filed 18 September 1984)

1. Unfair Competition § 1— employment agency—unfair trade practices—sufficiency of evidence

In plaintiff's action to recover for unfair trade practices, plaintiff's evidence supported the claim and verdict that defendant violated G.S. 95-47.6(2) and (9) by advertising that "pre-screened, qualified applicants" were quickly available through it, whereas the work experience and reliability of the applicants had neither been investigated nor verified; plaintiff's president testified that defendant's employee told him that an applicant's in-state references had been checked; and defendant admitted at trial that no such check was made.

2. Unfair Competition § 1— unfair trade practices—cause of plaintiff's damages

In an action to recover damages allegedly resulting from plaintiff's employment of a bookkeeper through defendant employment agency, evidence was sufficient to show that plaintiff's damages resulted from defendant's violation of the unfair trade practices statute where the evidence tended to show that plaintiff's president relied upon defendant's false representations in hiring a bookkeeper.

3. Unfair Competition § 1— unfair trade practices alleged—contributory negligence not a defense

Contributory negligence is not a defense in an unfair trade practices action. G.S. 75-1.1.

4. Unfair Competition § 1— employment agency—Unfair Trade Practices Act applicable

The Unfair Trade Practices Act applied to defendant's activities in recommending employees to plaintiff and other employers, and there was no merit to defendant's contention that the Act should apply only to buyer-seller relationships and competition between business competitors.

Judge HEDRICK dissenting.

APPEAL by defendant from *Johnson, Judge.* Judgment entered 12 April 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 3 May 1984.

Plaintiff sued for damages allegedly resulting from employing a bookkeeper through defendant employee placement agency. Plaintiff's owner and president, Thomas Etowski, testified that: He telephoned defendant's Fayetteville office about his need for a bookkeeper because of defendant's advertisement in the Fayetteville telephone directory and certain periodicals, which was as follows:

> Snelling and Snelling, World's Largest Employment Service; Pre-screened, qualified applicants quickly available. Men and women for secretarial, office, clerical, administrative, technical, sales. If you're looking for a job or want to fill one: "WHERE TO CALL" Snelling and Snelling . . . 483-3671.

He described the job duties to one of defendant's employees, and another employee of defendant, Penny Davis, later telephoned him, stating that they had a qualified candidate for the position, one Mary Rebecca Skinner. After interviewing Ms. Skinner, he telephoned Penny Davis at the Snelling office and asked if Snelling had checked with Ms. Skinner's prior employers and other references and was told that they had checked the in-state references, but had not checked those out-of-state. Ms. Davis told him Ms. Skinner was highly qualified and highly recommended as a bookkeeper, and plaintiff hired her on 9 November 1979. As bookkeeper for his business, Ms. Skinner wrote and signed checks on company accounts, received rental payments, balanced the checkbook, verified bank statements, made bank deposits, and helped prepare the corporate tax returns. In July, 1980, Mr. Etowski discovered that some past due corporate tax returns had not been filed, the firm's rental escrow account was $24,000 short, and some company records, including the bank statements, were missing. Confronted with this information and a demand that the records be produced, Ms. Skinner left the office and did not return. Etowski contacted the Cumberland County sheriff, who later informed him that Rebecca Skinner had a criminal record in that county for writing worthless checks, embezzlement, and forgery.

Upon being indicted for embezzling funds from the plaintiff corporation, Ms. Skinner pled guilty and was sentenced to prison for a term of ten years. At trial the evidence also showed that: Though Ms. Davis had questioned Ms. Skinner about her technical qualifications and work experience, defendant's employees had not contacted any of Ms. Skinner's former employers or other references and had not otherwise investigated her criminal record or reputation for either honesty or efficiency. One of Ms. Skinner's former employers, a Fayetteville concern whose name was listed on the resume Ms. Skinner furnished defendant, had caught Ms. Skinner embezzling company funds and had prosecuted her for it.

In filing suit, plaintiff alleged that defendant negligently failed to investigate the background and references of Ms. Skinner and violated G.S. 95-47.6(2) and (9), which prohibits private personnel agencies from advertising falsely or giving misleading information to employers, and G.S. 75-1.1, North Carolina's Unfair Trade Practices Act. The issues submitted to the jury were in two sections, one for the negligence claim and the other for the Chapter 75 unfair trade practices claim, and were answered as indicated:

I.  Negligence Issues:

Issue Number One (1):

Was the Plaintiff, Winston Realty Co., Inc., damaged by the negligence of the Defendants, G.H.G., Inc., t/a Snelling and Snelling?

ANSWER: YES

Issue Number Two (2):

Did the Plaintiff, Winston Realty Co., Inc., by its own negligence contribute to its damage?

ANSWER: YES

II.  Chapter 75. Issues:

Issue Number Three (3):

Did the Defendant, G.H.G., Inc., t/a Snelling and Snelling, do one or more of the following:

(a). Publish or cause to be published false or fraudulent information, representation, promise, notice or advertisement:

(b). Knowingly make a false or misleading promise or representation or give false or misleading information to the Plaintiff in regard to employment, work or position, its nature, location, duration, compensation, or the circumstances surrounding any employments, work or position including the availability thereof.

ANSWER: YES

Issue Number Four (4):

Was Defendant's conduct in commerce or did it affect commerce?

ANSWER: YES

Issue Number Five (5):

Was Defendant's conduct a proximate cause of the damage to plaintiff's business?

ANSWER: YES

III.   Issue Number Six (6):

What amount, if any, is the Plaintiff, Winston Realty Co., Inc., entitled to recover?

ANSWER: $19,000.00

The court ruled that the facts found by the jury constituted an unfair and deceptive trade practice and trebled the damages pursuant to G.S. 75-16; but denied plaintiff's prayer for attorney's fees pursuant to G.S. 75-16.1. From the judgment so entered for plaintiff, defendant appeals.

*Reid, Lewis & Deese, by Marland C. Reid, for plaintiff appellee.*

*Russ, Worth, Cheatwood & McFadyen, by Philip H. Cheatwood, for defendant appellant.*

PHILLIPS, Judge.

Defendant first contends that the trial court committed reversible error in allowing plaintiff's witness, Thomas Etowski, to testify as to his interpretation of the word "pre-screen," as used in defendant's yellow page advertisement. The contention is that it was up to the court to determine the meaning of the word as a matter of law. We disagree. First of all, the testimony objected to, instead of an interpretation of anything, mostly stated the witness's understanding of defendant's function, which was appropriate under the circumstances that existed. The following is an example: "I understand the function of the personnel agency was that they were going to do the checking, the screening, the verifying of the information so that when I, as an employer, was hiring someone . . . I didn't have to do all that." Furthermore, the meaning that defendant relies on — an unidentified dictionary definition of the word "screen," which defendant introduced into evidence — is itself incomplete, if not indefinite. Of the several definitions stated on the exhibit, the only one possibly applying to this case is: "To interview or test in order to separate according to skills, personality, aptitudes, etc." The "etc.," of course, adds other characteristics along the same lines as skills, personality, and aptitudes to the definition; and under the circumstances, whether defendant's advertisement that it had "[p]re-screened, qualified" bookkeepers available for early employment implied that the applicant's work experience and reliability had been checked was a question of fact, rather than law. Finally, even if the witness's testimony be construed as an interpretation that the word pre-screened meant that the references and work experience of applicants had been checked, plaintiff's evidence that defendant's employee expressly represented that Ms. Skinner's in-state references had been checked rendered the interpretation harmless in any event.

[1] Defendant next contends that its motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence should have been granted for three reasons: First, because the Chapter 75 unfair trade practices claim is based on defendant violating G.S. 95-47.6(2) and (9), which forbids false advertising by personnel agencies, and the evidence shows no such violation; second, even if the evidence tends to show defendant violated the statute, it does not show that plaintiff's damages

resulted therefrom; and, third, even if defendant's violation of the statute was a proximate cause of plaintiff's damages, plaintiff's claim is nevertheless barred because of its own contributory negligence, which the verdict established. The statutory provisions defendant allegedly violated follow; the portions of Chapter 75 that they relate to will be set forth later:

§ 95-47.6. Prohibited acts.

A private personnel service shall not engage in any of the following activities or conduct:

. . . .

(2) Publish or cause to be published any false or fraudulent information, representation, promise, notice or advertisement.

. . . .

(9) Knowingly make any false or misleading promise or representation or give any false or misleading information to any applicant or employer in regard to any employment, work or position, its nature, location, duration, compensation or the circumstances surrounding any employment, work or position including the availability thereof.

For the reasons stated in addressing defendant's first assignment of error, it is quite plain, we think, that plaintiff's evidence supported the claim and verdict that defendant violated G.S. 95-47.6(2) by advertising that "[p]re-screened, qualified applicants" were quickly available through it, whereas the work experience and reliability of the applicants had been neither investigated nor verified. And in dwelling just on the false advertisement part of the claim and verdict, defendant is mistaken. Independently, as Issue Number Three (b) shows, was the charge that defendant violated G.S. 95-47.6(9) by knowingly making false or misleading representations or giving false or misleading information to plaintiff concerning the employment. This separate claim and the verdict on this issue was supported by Mr. Etowski's testimony that Ms. Davis told him Ms. Skinner's in-state references had been checked and by defendant's admission that no such check was made.

[2]  The defendant's contention that plaintiff's damages did not proximately result from the misinformation received likewise fails. The proximate cause issue, nearly always a question of fact, rather than law, was properly submitted to the jury. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980). Plaintiff's witness testified that he relied upon defendant's false representations in hiring Rebecca Skinner. From that evidence, the jury was at liberty to conclude that some of plaintiff's damages, at any rate, proximately resulted from the representations so made. The verdict also indicates that the jury concluded that some of the damages claimed did not proximately flow from the misrepresentations. We do not believe the verdict should be disturbed.

[3]  The contention that contributory negligence is an absolute defense to a Chapter 75 action is also rejected. What contributory negligence is an absolute defense to, and all it is a defense to, as Judge Johnson correctly ruled, is a claim based on negligence. But Chapter 75 actions are not based upon negligence; they are based upon "unfair or deceptive acts or practices in or affecting commerce," which the General Assembly has made unlawful. G.S. 75-1.1. In regard to this, our Supreme Court said:

> A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers . . . [a]n act or practice is deceptive . . . if it has the capacity or tendency to deceive.

*Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 263, 265, 266 S.E. 2d 610, 621-2 (1980). After discussing the history of this Act and observing that the legislative intent was to establish an effective private cause of action for aggrieved consumers in this State because common law remedies had often proved ineffective, our Supreme Court remarked:

> If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public. Consequently, good faith is not a defense to an alleged violation of G.S. 75-1.1.

*Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E. 2d 397, 403 (1981).
For similar reasons, it seems plain that the Legislature did not in-
tend for violations of this Chapter to go unpunished upon a show-
ing of contributory negligence. If unfair trade practitioners could
escape liability upon showing that their victims were careless,
gullible, or otherwise inattentive to their own interests, the Act
would soon be a dead letter.

[4] Defendant finally contends that, as a matter of law, Chapter
75 does not apply to its activities in this case and the judgment to
the contrary should therefore be set aside. The argument, in gist,
is that the Chapter applies only to buyer-seller relationships and
competition between business competitors. Certainly, the parties
were not in competition with each other and defendant made no
sale to plaintiff. Defendant just recommended that plaintiff
employ Ms. Skinner, one of its supposedly qualified applicants,
and its compensation was not received from plaintiff, but from
Ms. Skinner after plaintiff employed her. Nevertheless, we
believe that defendant's activities were subject to the Chapter. In
pertinent part, G.S. 75-1.1 provides as follows:

> 75-1.1. Methods of competition, acts and practices regulated;
> legislative policy.
>
> (a) Unfair methods of competition in or affecting com-
> merce, and unfair or deceptive acts or practices in or affect-
> ing commerce, are declared unlawful.
>
> (b) For purposes of this section, "commerce" includes all
> business activities, however denominated, but does not in-
> clude professional services rendered by a member of a learn-
> ed profession.
>
> . . . .
>
> (d) Any party claiming to be exempt from the provisions
> of this section shall have the burden of proof with respect to
> such claim.

The breadth and scope of these provisions requires no elabora-
tion, and we are of the opinion that defendant's activities were
covered by them. In recommending employees to plaintiff and
other employers defendant certainly was engaged in business and
its activities obviously affected commerce. On this subject, our

Supreme Court has said, " '[c]ommerce' in its broadest sense comprehends intercourse for the purposes of trade in any form." *Johnson v. Phoenix Mutual Life Insurance Co., supra.* No doubt, because the Act is so broad and comprehensive, the Legislature specifically excluded members of a learned profession from its application, but it has not excluded employment agencies, and defendant has not shown that it is exempt. We therefore hold that Chapter 75 does apply to defendant's activities in this case and overrule this assignment of error also.

No error.

Judge ARNOLD concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

In paragraph eleven of its amended complaint, plaintiff alleged that defendant engaged in an "unfair and deceptive act or practice affecting commerce" in violation of N.C. Gen. Stat. Sec. 75-1.1, and prayed that any damages be trebled pursuant to G.S. 75-16. The court did not submit an issue to the jury, however, as to whether defendant did in fact engage in an unfair or deceptive act or practice in its dealings with the plaintiff. Issues 3(a) and (b), set out in the record and in the majority opinion, are couched in the language of the rules and regulations governing the operation of private personnel services described in G.S. 95-47.6(2) and (9). It appears that the trial court entered a judgment based on a finding that the defendant had violated the provisions of G.S. 95-47.6(2) and (9). A party violating these statutes is subject to punishment by the Commissioner of Labor by means of warnings, a fine of up to $250.00, and suspension or revocation of the license of the private personnel service. While evidence that defendant violated these statutes might also support a finding that defendant engaged in an unfair or deceptive act or practice in violation of G.S. 75-1.1, the court, in my opinion, has no authority to enter a judgment pursuant to Chapter 75 on a verdict disclosing only a violation of Chapter 95. In short, the issues submitted to the jury do not resolve the controversy between the parties raised by the pleadings and the evidence with respect to whether defendant

engaged in an unfair or deceptive act or practice. I vote to award the defendant a new trial.