**NEW ENGLAND LEATHER COMPANY,**
**Plaintiff-Appellant,**

v.

**FEUER LEATHER CORPORATION,**
**Defendant-Appellee.**

**No. 90-2694.**

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1991.

Decided Aug. 8, 1991.

J. Richardson Rudisill, Jr., argued (Harding K. Crowe, on brief), Rudisill & Brackett, P.A., Hickory, N.C., for plaintiff-appellant.

Douglas George Eisele, Eisele & Ashburn, P.A., Statesville, N.C., for defendant-appellee.

Before HALL and WILKINSON, Circuit Judges, and BOYLE, District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case presents a choice of law issue: which state's law governs a deceptive trade practice claim arising from a multi-state sale of goods. Appellant, a seller of leather hides, alleges that appellee supplier deceived it by charging for top quality hides while providing appellant's customers with low grade hides. The seller contends that North Carolina law controls its claim, while the supplier points to the law of New York as controlling. The district court ruled that New York law governed and that under that state's law appellant was not entitled to recover.

We are unpersuaded by appellant's arguments that North Carolina law should govern this suit. The fact that some of appellant's dissatisfied customers were located in North Carolina is not sufficient to make North Carolina law controlling when the relationship between appellant seller and appellee supplier was centered in New York. We therefore affirm the district court's judgment.

## I.

Appellant New England Leather Company ("NELC") was a partnership formed to sell leather hides to the furniture industry for use as upholstery. The partnership was formed under the laws of Massachusetts and had its principal place of business in that state. David Rubin and Kenneth Gussion possessed controlling interests in NELC. Rubin managed the partnership's financial affairs and Gussion was its chief salesman. Gussion sold hides supplied to the partnership by appellee Feuer Leather, a New York corporation.

Feuer originally supplied NELC with side leather only, but sometime in 1982 or 1983 NELC approached Feuer about supplying whole leather hides. NELC had observed that whole leather was in demand particularly among manufacturers of top quality furniture. Although Feuer had not previously produced whole leather hides, it arranged with NELC to attempt to meet its needs.

Under their arrangement, Feuer provided NELC with sample hides. According to NELC, these sample hides were of the highest quality, namely ABC quality. Gussion traveled the country with the samples hoping to interest furniture makers in NELC's leather. From October 1984 to December 1985, Gussion entered into approximately 100 sales transactions for ABC quality whole hides in at least eleven different states including North Carolina. Interested customers typically ordered leather from NELC in sample packs containing hides that a customer could then evaluate to determine if they met its needs for leather upholstery.

After Gussion received an order for a sample pack, he generally transmitted the order to Rubin who passed it along to Feuer in New York. Feuer would fill the order, bill NELC, and arrange to have the merchandise shipped directly to NELC's customers. NELC alleges, however, that Feuer did not execute the orders in the way that it had agreed. Instead of shipping ABC quality hides, NELC contends that Feuer shipped lower quality (DEF) hides yet charged NELC for ABC quality goods. When NELC received complaints from its customers about the quality of hides, it alerted Feuer to the problem. When the parties could not resolve their differences, NELC eventually switched suppliers.

NELC later brought suit in North Carolina superior court contending that Feuer had violated North Carolina's unfair trade practices statute by intentionally misrepresenting the quality of goods it shipped to NELC's customers. Section 75–1.1 of the North Carolina General Statutes prohibits "unfair methods of competition ... and unfair or deceptive acts or practices in or affecting commerce." Chapter 75 provides for treble damages and the possibility of attorneys fees for successful plaintiffs. N.C.Gen.Stat. §§ 75–16, –16.1 (1988).

In its complaint, NELC alleged three ways that its business interests in North Carolina had been harmed by Feuer's practices: (1) overcharges for lower quality hides, (2) lost profits on goods returned by some of its customers, and (3) lost customer confidence in its ability to supply top quality hides. Feuer responded that al-

though it may have been unsuccessful in some of its attempts to provide top quality hides, none of the aggravating circumstances necessary to sustain a deceptive trade practices claim were present in the case. Feuer also argued that it was unclear whether NELC had actually been damaged by the shipment of any nonconforming goods since there was little evidence of any monetary loss resulting from the return of goods.

Feuer had the suit removed to federal court where a trial was held. After NELC had presented its case, Feuer moved for a directed verdict arguing that North Carolina law should not be applied because the state lacked an adequate nexus to the challenged transactions. The district court agreed that North Carolina law should not be applied and looked instead to the law of New York because the events giving rise to any injury to NELC had occurred in that state. The court further determined that under applicable New York law only transactions involving consumers could be challenged as deceptive trade practices. The court accordingly granted a directed verdict for Feuer. NELC now appeals.

## II.

The parties dispute which state's law should govern NELC's claim. NELC contends that North Carolina law controls this suit, while Feuer argues that New York law governs. We conclude that New York law controls NELC's claim and that it is not entitled to recover for a deceptive trade practice under the laws of that state.*

## A.

■ To decide the choice of law issue, we apply the choice of law rules of the forum state, North Carolina. *Santana, Inc. v. Levi Strauss and Co.*, 674 F.2d 269, 272 (4th Cir.1982). Under North Carolina law, two different methods have been used to assess which state's law governs a deceptive trade practice claim. *See Simms Inv. Co. v. E.F. Hutton & Co.*, 688 F.Supp.

193, 198–99 (M.D.N.C.1988) (compiling cases). Under one approach, the law of the state where the injuries were sustained governs the claim. The second approach seeks to apply the law of the state with the most significant relationship to the transaction.

The place of injury rule has at times been considered advantageous because it can enable a court to discern quickly the law governing a dispute. However, in a triangular commercial relationship involving seller, supplier, and customers, the place of injury will often be unclear and the advantages to business practice of a bright-line rule disappear. NELC contends, for example, that its ability to do business in North Carolina was injured and that North Carolina, therefore, was the place of injury. Yet NELC also alleges that its ability to do business in general was injured by the defendant, and NELC was doing business in at least eleven states. Courts have differed over whether injury occurs where business is lost (in the customer's state) or where the profits are lost (in the state of plaintiff's place of business). *American Rockwool, Inc. v. Owens–Corning Fiberglass Corp.*, 640 F.Supp. 1411, 1429 n. 8 (E.D.N.C.1986). The former approach would point to any of eleven states while the latter approach would point to Massachusetts as the place of injury. It could also be argued that New York is the place of injury because that is where the allegedly deceptive representations were made, where the nonconforming goods were packaged, and where Feuer charged NELC for the goods. *See Santana, Inc.*, 674 F.2d at 273.

■ Where the place of injury is so open to debate, the most significant relationship test seems appropriate. A principal advantage of this test is that it enables a court to assess the strength of a state's relationship to a transaction before its laws are applied. In contrast, the traditional choice of law approach as embodied in the place of the injury rule may often dictate that the laws

---

* The parties also argue over whether NELC's claim is properly characterized under North Carolina law as one of deceptive trade practice or breach of contract. Because we affirm the district court's holding that New York law applied, we see no need to address any question involving the substantive law of North Carolina.

of a state with only a minor connection to a transaction should govern. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 308 n. 11, 101 S.Ct. 633, 638 n. 11, 66 L.Ed.2d 521 (1981). Examining a state's relationship to a transaction before applying its laws is particularly important when the claim at issue is one for a deceptive trade practice, a cause of action whose parameters vary among the states and which carries with it a treble damages penalty.

■ Under the significant relationship test we consider where the relationship between the parties was created and where it was centered. *Santana, Inc.,* 674 F.2d at 273–74. The original negotiations between the parties on the provision of whole hides took place at Feuer's offices in New York City. Not only was the relationship created in New York, but it was also centered there. Feuer is a New York corporation with its principal place of business in that state. The sample hides that NELC sold were purchased from Feuer in New York. NELC sent its orders for hides to Feuer in New York where the hides were warehoused and where the hides were shipped on interstate carriers to customers throughout the United States. When Gussion and Rubin met with Feuer officials to question the quality of goods being shipped, the meeting occurred at a Feuer affiliate in New York. The combination of these contacts points to New York as the state with the most significant relationship to the transactions. *See Andrew Jackson Sales v. Bi–Lo Stores, Inc.,* 68 N.C.App. 222, 314 S.E.2d 797, 799 (1984); *Michael v. Greene,* 63 N.C.App. 713, 306 S.E.2d 144, 145 (1983).

In contrast to New York, the state of North Carolina's connections to the transactions are minimal. NELC seems to suggest that North Carolina has a significant relationship to the challenged transactions by virtue of goods being shipped to manufacturers in the state. Yet hides were also shipped to customers in at least ten other states. NELC has offered no good reason why the law of North Carolina anymore than the law of one of these other jurisdictions should apply. Indeed, NELC's proposed choice of law rule is rife with opportunities for manipulation. For example, if NELC perceived that it had a greater chance of recovery on its claims under Indiana law, it could argue that Indiana law should apply because hides were shipped into that state.

NELC argues, however, that North Carolina has a greater relationship to the transactions than do other states because the harm caused to NELC's ability to do business in North Carolina was greater than the harm it suffered elsewhere. NELC does not measure this harm in quantitative terms for only approximately seventeen of the one hundred transactions at issue were shown to have occurred in North Carolina. Instead, NELC argues that harm to its ability to do business in North Carolina is qualitatively significant because the heart of the nation's furniture industry is located in the state.

This notion of reputational harm in the "heartland" of an industry is not only a slippery choice of law criterion; its accuracy in this case is also open to question. At trial, NELC presented the testimony of two North Carolina furniture company executives designed to show that they had lost confidence in NELC's ability to provide high quality leather. In reality, the record reflects that these manufacturers were quite able to distinguish between problems with NELC's supplier and problems with NELC itself. The two executives, in fact, testified that they retained confidence in Kenneth Gussion, the salesman from whom they had purchased the allegedly defective NELC goods.

Moreover, none of the North Carolina manufacturers were themselves harmed by the allegedly defective goods sold by Feuer to NELC. If a company was dissatisfied with goods that it received from NELC, it could simply return the goods for a refund. When a North Carolina resident has neither been harmed by an allegedly deceptive trade practice nor perpetrated it, we think the state's relationship to the challenged transactions is insignificant. *See United Virginia Bank v. Air-lift Assoc.,* 79 N.C.App. 315, 339 S.E.2d 90, 93 (1986) ("purpose of G.S. 75–1.1 is to ... maintain ethical standards of dealings between persons engaged in business and the consuming public within this State.")

Finally, we note that applying North Carolina law to the extraterritorial conduct at issue in this case raises constitutional concerns. Although Feuer conceded the existence of personal jurisdiction, the question remains whether North Carolina has sufficient contacts with this litigation so that application of its substantive law would be neither arbitrary nor fundamentally unfair under the Due Process Clause. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 317 n. 23, 101 S.Ct. 633, 642 n. 23, 66 L.Ed.2d 521 (1981) ("examination of a State's contacts may result in divergent conclusions for jurisdiction and choice-of-law purposes"). Applying North Carolina law would have due process implications here because no North Carolina resident is involved in this litigation and because the elements of a deceptive trade practice claim vary among the states. Consequently, a party could lack notice that conduct committed in one state and not considered a deceptive trade practice there could be the basis for a treble damage award in North Carolina. *See The In Porters, S.A. v. Hanes Printables, Inc.* 663 F.Supp. 494, 501–02 (M.D.N.C.1987); *American Rockwool, Inc.,* 640 F.Supp. at 1436–37. Avoiding any constitutional infirmities associated with applying North Carolina law is one more reason why we believe the law of New York, a state which clearly has a "significant aggregation of contacts" with these transactions under *Hague,* should govern.

### B.

The New York cause of action for a deceptive trade practice was designed to protect the public by providing a remedy for consumer fraud. *Genesco Entertainment v. Koch,* 593 F.Supp. 743, 750–53 (S.D.N.Y.1984); *Ciccolo v. Chicago Research and Trading Group, Ltd.* 161 A.D.2d 364, 555 N.Y.S.2d 318 (1990). Consequently, one business entity's claims that another business deceived it lie outside the purview of New York's unfair trade practices statute. *See H2O Swimwear Ltd. v. Lomas & Gottex Indus., Inc.,* 164 A.D.2d 804, 560 N.Y.S.2d 19 (1990); *Quail Ridge Assoc. v. Chemical Bank,* 162 A.D.2d 917, 558 N.Y.S.2d 655 (1990). Because the

transactions in this case were between two business entities and had no impact on consumers, we agree with the district court's conclusion that NELC is not entitled to recover under New York law.

### III.

We do not hold that NELC is without means of redress. While NELC chose not to raise a breach of contract claim in the North Carolina district court, NELC apparently has done so in a New York state proceeding. That NELC may have a legitimate breach of contract claim does not mean, however, that it should be able to transmute that claim into one for a deceptive trade practice under North Carolina law. Though the North Carolina statute has a role to play in encouraging ethical conduct, no application of North Carolina law is justified in a case where the relationship of the transactions to North Carolina is so slight.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.