### FOOD LION, INC.
### v.
### CAPITAL CITIES/ABC, INC., ABC Holding Co., American Broadcasting Companies, Inc., Lynne Litt, Richard N. Kaplan, Ira Rosen and Susan Barnett, Defendants.

#### No. 6:92CV592.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Nov. 27, 1996.

---

W. Andrew Copenhaver, David A. Shirlen, Elizabeth B. McGee, Winston–Salem, NC, John J. Walsh, New York City, Richard L. Wyatt, Jr., Washington, DC, for plaintiff.

H. Hugh Stevens, Jr., Jerry S. Alvis, Katherine A. O'Connor, Raleigh, NC, Randall Turk, William Jeffress, Jr., Washington, DC, Alan W. Duncan, Greensboro, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

This matter is before the Court on Defendants' Renewed Motion to Dismiss Plaintiff's Claims of Breach of Fiduciary Duty/Constructive Fraud and Unfair or Deceptive Trade Practices, or in the Alternative, for Summary Judgment [Doc. # 374]. For the reasons stated below, Defendants' Motion is DENIED.

### I.

Defendants Lynne Litt[1] and Susan Barnett are both employed by the ABC news program *Prime Time Live*. The television show at some point determined that it would prepare and broadcast a story on Food Lion stores. In an attempt to gain access to parts of Food Lion stores not generally open to the public, Litt and Barnett applied for positions of employment with Food Lion. Both pro-

---

1. Lynne Litt, now Lynne Neufer Dale, filed a notice of name change and requested that all future pleadings directed to her use the name Lynne Neufer Dale [Doc. # 194]. Defendants did not file a motion to change the caption of the case to reflect that name change. Because the caption still refers to Ms. Dale as Lynne Litt, the Court will use that name to refer to her herein.

vided false information to Food Lion in order to obtain a position. Barnett was eventually employed as a deli clerk in a store in South Carolina. Litt was employed as a meat wrapper in North Carolina. During the brief period of their employment, each wore a hidden camera, secreted in a wig, into work areas and recorded video footage. Some of this footage was ultimately used in a *Prime Time Live* broadcast which was highly critical of Food Lion. This lawsuit arises as a result of these actions.

Two of Food Lion's claims are at issue here. Food Lion claims that Litt and Barnett, as Food Lion employees, owed Food Lion a duty of loyalty and that they violated that duty by serving another, undisclosed, master while "working" for Food Lion. In addition, Food Lion claims that the actions of Defendants were unfair and deceptive acts which violated the North Carolina Unfair Trade Practices Act.

## II.

### A. Posture of the Motion

The questions of whether there can be a claim for breach of fiduciary duty and whether the Unfair and Deceptive Trade Practices Act can be properly applied in this case involve both a question of law and a factual dispute. Defendants' motion on this issue will be examined first as a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g., United Roasters, Inc. v. Colgate–Palmolive Co.,* 485 F.Supp. 1041 (1979),[2] and, if a claim survives that stage, it will then be examined as a motion for summary judgment.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court should accept as true all well-pleaded allegations. Viewing the complaint in a light most favorable to the plaintiff, the court should not dismiss the case unless it appears certain that the plaintiff can prove no set of facts which would entitled him to relief. *Mylan Lab, Inc. v.*

*Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). However, because the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint, the court is not bound by a plaintiff's legal conclusions. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).

Summary judgment is proper only if there is no genuine issue as to any material fact. The moving party on a motion for summary judgment will have the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense or showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir.1993); *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

### B. Choice of Law Issues

Resolution of the violation of fiduciary duty claim is governed by the law of the "forum in which the acts giving rise to the claim occurred." *Tatham v. Hoke,* 469 F.Supp. 914, 916 (W.D.N.C.1979) (citing *Charnock v. Taylor,* 223 N.C. 360, 26 S.E.2d 911 (1943)), *aff'd,* 622 F.2d 584 (4th Cir.1980). Therefore, the claim involving Litt's alleged violation of fiduciary duty will be governed by North Carolina law since she was employed by Food Lion in North Carolina. The claim involving Barnett's alleged violation of fiduciary duty will be governed by South Carolina law since

---

**2.** In that case, the court stated that treatment as a motion to dismiss is proper when the court is "concerned only with the sufficiency of the alle-gations within a count and not with factual material." 485 F.Supp. at 1043.

the actions giving rise to the claim occurred in that state.[3]

In addition, there are some potential choice of law issues encompassed in the Unfair Trade Practices Act claim. Because some of the actions occurred in North Carolina and some occurred in South Carolina, there must be some determination of which state's law will apply or whether the dispute should be divided into two parts with one part controlled by North Carolina law and one part controlled by South Carolina law.

Although the actions underlying this suit occurred in two different states, the overall action was a united effort on the part of *Prime Time Live* to develop a story on Food Lion. Litt and Barnett both worked for *Prime Time Live*. Each individual's efforts to obtain hidden camera footage in Food Lion was apparently sanctioned by senior members of the *Prime Time Live* staff. The legal department at ABC apparently reviewed some of the documents to be submitted and/or discussed some of the actions to be taken by Litt and Barnett. The efforts of Litt and Barnett produced hidden camera footage which was used in constructing one *Prime Time Live* story about Food Lion. The actions of Litt and Barnett on behalf of *Prime Time Live* were not separate incidents; rather they were part of a common plan to develop a story on Food Lion for *Prime Time Live*. Therefore, the actions will be treated as part of one episode for the purposes of the claim under the Unfair Trade Practices Act.

Since the actions will be treated as one incident, it must be determined what law should govern that incident. North Carolina courts have developed two different approaches to choice of law issues under the Unfair Trade Practices Act. The first is the "most significant relationship" test. *See, e.g., Andrew Jackson Sales v. Bi–Lo Stores, Inc.,* 68 N.C.App. 222, 314 S.E.2d 797 (1984); *Michael v. Greene,* 63 N.C.App. 713, 306 S.E.2d 144 (1983). Under this test, the court looks to "the law of the state having the most significant relationship to the occurrence giving rise to the action." *Andrew Jackson,* 314 S.E.2d at 799. The other test sometimes employed by North Carolina courts looks to "the law of the state where the injuries were sustained." *New England Leather Co. v. Feuer Leather Co.,* 942 F.2d 253, 255 (4th Cir.1991). *See also, United Va. Bank v. Air–Lift Assoc., Inc.,* 79 N.C.App. 315, 339 S.E.2d 90 (1986). The North Carolina Supreme Court has not decided the issue.

As the Fourth Circuit has noted, the place of injury may often be open to debate thereby making the place of injury test difficult to apply. *New England Leather,* 942 F.2d at 255–56. Conversely, the "most significant relationship" test eliminates that debate and "enables a court to assess the strength of a state's relationship to the transaction before its laws are applied." *Id.* Application of the "most significant relationship" test makes sense in this case.

■ Food Lion is a corporation organized under the laws of North Carolina. The company has its principle place of business in Salisbury, North Carolina. Litt worked for Food Lion in North Carolina for twelve days. She worked in both the Longview, North Carolina store and the Newton, North Carolina store. Barnett worked for Food Lion in Myrtle Beach, South Carolina for eight days. Other members of the *Prime Time Live* crew recorded footage in the public parts of Food Lion stores in both North and South Carolina. To the extent that either state has a significant relationship, the relationship of North Carolina is the more significant relationship. Therefore, North Carolina law will be applied to the claim under the Unfair Trade Practices Act.

### III.

#### A. Fiduciary Duty

Defendants maintain that there can be no violation of fiduciary duty because there never was a fiduciary relationship for Litt and Barnett to violate. For a fiduciary relationship to exist, according to Defendants, there must be a relationship of special confidence

---

**3.** Neither of the parties argued about the choice of law involved in this case. It is set out here only for the purposes of clarity and completeness. In most instances, there will be no practical difference in the outcome due to the variance in controlling law.

or access to confidential information. In some contexts, Defendants' contentions might be correct. To the contrary, however, it appears both the North Carolina and South Carolina Supreme Courts likely would recognize a broader claim.

■ In its Amended Complaint, Plaintiffs state that Litt and Barnett "owed Food Lion a fiduciary duty of unselfish and undivided loyalty." (Amended Compl. ¶ 116 [Doc. # 47]). The complaint goes on to list poor job performance, as well as the appropriation of information, as possible violations of that duty. Under the liberal notice pleading requirements of the Federal Rules of Civil Procedure, Plaintiff's complaint can be fairly read as stating a claim for relief not confined to violation of a duty based on a confidential relationship.

Both the North Carolina and South Carolina courts seem to recognize a duty of loyalty in the employment context which is not confined to maintaining employer confidences. *See, e.g., McKnight v. Simpson's Beauty Supply, Inc.,* 358 S.E.2d 107, 109 (N.C.Ct.App.1987) (stating that "the law implies a promise on the part of every employee to serve his employer faithfully and discharge his duties with reasonable care and attention."); *Long v. Vertical Technologies, Inc.,* 113 N.C.App. 598, 439 S.E.2d 797, 802 (1994) (stating that disloyalty of employees was a violation of "their fiduciary duty of good faith, fair dealing and loyalty"); *Lowndes Prods., Inc. v. Brower,* 259 S.C. 322, 191 S.E.2d 761, 767 (1972) (stating that "[a]n employee has a duty of fidelity to his employer apart from the question whether he has an obligation to maintain the employer's processes and systems of operation in confidence."). There is a cause of action for violation of the duty of loyalty. Since the courts recognize the existence of a duty of loyalty, it follows that they would recognize a claim for breach of that duty and that Food Lion's claim should not be dismissed under Rule 12(b)(6).

As discussed, an employee has a duty to use her efforts, while working, for the service of her employer. The potential violation of that duty here lies in Litt and Barnett being employed by Food Lion and ABC at the same time. Food Lion did not know of their affiliation with ABC. Meanwhile, ABC not only knew of the affiliation with Food Lion but in fact sent the two to work in Food Lion stores in order to serve the objectives of ABC.

■ The Restatement (Second) of Agency provides that "a person may be the servant of two masters ... at one time as to one act, if the service to one does not involve abandonment of the service to the other." Restatement (Second) of Agency § 226. A reasonable jury could find that, because of Litt's and Barnett's affiliation with and allegiance to ABC, they did not adequately perform their duties while working with Food Lion. This is a genuine issue of material fact which precludes summary judgment on this issue.

■ Defendants further argue that the remedy when an employee does not use her best efforts in the service of her employer is to discharge that employee. While this is one remedy, it is not the only one in this situation. The North Carolina Court of Appeals has allowed an employer to recover the fair value of the services that the plaintiffs supplied to another venture while the plaintiffs were employees of the defendant. *Long v. Vertical Technologies, Inc.,* 113 N.C.App. 598, 439 S.E.2d 797, 802 (1994). If the jury finds that Litt and Barnett did not adequately perform their Food Lion jobs because of a motivation to serve the interests of ABC, then Defendants could be liable, at least, for the fair value of the services Litt and Barnett deprived Food Lion while serving the interests of their undisclosed master, ABC.

Plaintiff seems to contemplate a very broad duty of loyalty. For instance, Plaintiff states that "this duty applies not only to information denominated as confidential, but also to information which the employee should know that the employer would not want revealed to others." (Pl.'s Opp'n to Defs.' Renewed Mot. to Dismiss, at 8).[4] If

---

4. In support of this proposition, Plaintiff cites Restatement (Second) of Agency § 395. That section is titled "Using or Disclosing Confidential Information." Plaintiff cites comment b of that section which provides

this language were applied to the facts of this case, the result would be more far reaching than is reasonable.

In addition to the claims that Litt and Barnett were substandard employees because of their loyalty to ABC and that they disclosed information learned during the time they held their Food Lion positions, Food Lion also claims that Litt and Barnett "staged" many of the scenes which appear in the hidden camera tapes and which subsequently were broadcast on the *PrimeTime Live* broadcast. Plaintiff claims that such "staging" was a further breach of the duty of loyalty. The essence of the duty of loyalty contemplated here is that an employee has a duty to use her efforts, while on the job, in the furtherance of her employer's objectives and that a factual question may be created if the employee is attempting to serve two masters at the same time. Evidence of "staging" may be relevant to the jury's determination of whether Litt and Barnett were devoting their best efforts to Food Lion or were in fact more interested in serving the interests of ABC. Examples of conduct where Litt or Barnett disobeyed instructions or failed to adequately perform the duties of their Food Lion jobs, if they occurred, could show a breach of the duty of loyalty owed to Food Lion. Further, if these episodes were subsequently broadcast, then the jury could find part of the damage Food Lion suffered as a result of the *PrimeTime Live* story resulted from Litt's and Barnett's violation of fiduciary duty.[5]

## B. Unfair and Deceptive Trade Practices

■ The North Carolina Unfair Trade Practices Act [the Act or UTPA] is an act often noted for the breadth of its language. *See, e.g., Winston Realty Co., Inc. v. G.H.G., Inc.,* 70 N.C.App. 374, 320 S.E.2d 286, 291 (1984) (noting that the "breadth and scope of [the Unfair Trade Practices Act] provisions requires no elaboration"), *aff'd,* 314 N.C. 90, 331 S.E.2d 677 (1985). Originally enacted to give consumers aggrieved by unfair or deceptive business practices a private cause of action, the Act has been held to protect businesses as well. *See, e.g., McDonald v. Scarboro,* 91 N.C.App. 13, 370 S.E.2d 680, 683 (stating that the Unfair Trade Practices Act does not "protect only individual consumers, but serve[s] to protect business persons as well." (citations omitted)), *rev. denied,* 323 N.C. 476, 373 S.E.2d 864 (1988). Defendants claim that, because ABC and Food Lion were not in competition with one another and had no business relationship, the Act should not apply to Defendants' actions. Food Lion contends that the scope of the Act is not limited to business relationships but instead that the Act polices the conduct of any business to insure that its activities are not unfair or deceptive.

■ A claim under the UTPA requires proof of (1) conduct constituting an "unfair or deceptive act or practice;" (2) conduct "in or affecting commerce;" and (3) actual injury proximately caused by the alleged wrongful conduct. *See, e.g., Ellis v. Smith–Broadhurst, Inc.,* 48 N.C.App. 180, 268 S.E.2d 271, 273 (1980). Defendants dispute the "com-

---

The rule stated in this Section applies not only to those communications which are stated to be confidential, but also to information which the agent should know his principal would not care to have revealed to others or used in competition with him. It applies to unique business methods of the employer, trade secrets, lists of names, and all other matters which are peculiarly known in the employer's business.

This section is aimed more at information traditionally thought of as proprietary and therefore does not support the idea that employees should not disclose the type of information disclosed in this case.

**5.** Defendants assert and the Court recognizes that the time honored method for recouping damages based on falsity of a publication is an

action for defamation. Defendants claim that allowing Food Lion to claim any damages based on the eventual broadcast would provide Food Lion a method for making an "end run" around the defamation requirements but still give them an avenue for defamation damages. If Plaintiff shows that these "staging" incidents occurred for the purpose of making Food Lion look bad to fit in with ABC's story line, then the requirements of actual malice generally associated with a defamation action involving a public figure or a matter of public interest could be met. In such an instance, Plaintiff would not be allowed to claim defamation type damages without meeting the standards generally associated with defamation; instead, those same requirements would just be applied in a different cause of action.

merce" element. The Act defines "commerce" as including "all business activities, however denominated." N.C.Gen.Stat. § 75–1.1(b). Defendants claim that news gathering and journalism are not businesses within the purview of the statute. Plaintiff contends that the Act is broad enough to encompass Defendants and that it should be applied to them here.

The North Carolina Supreme Court has stated that business activities "is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 403 S.E.2d 483, 492 (1991). Moreover, the only activities excluded from the statute by the courts [6] thus far are the relationship between employers and employees, *Buie v. Daniel Int'l Corp.*, 56 N.C.App. 445, 289 S.E.2d 118 *rev. denied*, 305 N.C. 759, 292 S.E.2d 574 (1982), securities transactions, *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236, 237 (1985), and homeowners who sell their own homes, *Robertson v. Boyd*, 88 N.C.App. 437, 363 S.E.2d 672 (1988). In both the employment context and the securities context, the courts noted that the exclusion from statutory coverage was based on the existence of specific legislation to govern those areas. *See Buie*, 289 S.E.2d at 120 (noting that "[e]mployment practices fall within the purview of other statutes adopted for that express purpose."), *HAJMM Co.*, 403 S.E.2d at 493 (noting that both of the courts ruling that securities transactions fell outside of the scope of the Act recognized as one reason for not applying the Act the fact that "to extend the Act to securities transactions would create overlapping supervision, enforcement, and liability in this area, which is already pervasively regulated by state and federal statutes and agencies. The courts concluded there is enough legislative apparatus in place to govern securities transactions without also applying the act."). The third area excluded by the courts is where a private homeowner sells his or her own home. In that situation, one of the courts so holding noted that

> The defendants ... were not engaged in trade or commerce. They did not by the sale of their residence on this one occasion become realtors. It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business, a commercial or industrial establishment or enterprise.

*Rosenthal v. Perkins*, 42 N.C.App. 449, 257 S.E.2d 63, 67 (1979). Other than these three instances, the North Carolina courts have been hesitant to restrict the statute. The various courts of the state have noted that "the Act is not intended to apply to all wrongs in a business setting." *HAJMM Co.*, 403 S.E.2d at 492. But the courts have resisted the suggestion that the parameters of the statute be limited.[7] For instance in *United Laboratories, Inc. v. Kuykendall*, the defendant invited the North Carolina Supreme Court to limit the Act "to actions involving consumers or, when used to protect businesses ... [limit it] only to areas involving fraudulent advertising or a buyer-seller relationship." 322 N.C. 643, 370 S.E.2d 375, 389 (1988). The court declined the invitation, stating

> we have not limited the applicability of [the Act] to cases involving consumers ... unfair trade practices involving only businesses affect the consumer as well.... although the issues in the cases cited by defendant involving unfair trade practices between businesses concerned fraudulent

---

6. The statute itself excludes "professional services rendered by a member of a learned profession," N.C.Gen.Stat. § 75–1.1(b), and any advertising medium when that party is unaware of "the false, misleading or deceptive character of the advertisement" and when the advertising medium does "not have a direct financial interest in the sale or distribution of the advertised product or service," *Id.* at § 75–1.1(c).

7. Perhaps one explanation for this reluctance lies in the fact that the North Carolina Supreme Court's attempt to limit the statute to exclude credit sale financing practices of a retail store in *State ex rel Edmisten v. J.C. Penney Co.*, 292 N.C. 311, 233 S.E.2d 895 (1977), resulted in a quick amendment by the legislature overruling the limitation.

advertising and buyer-seller relationships, there is nothing in those opinions stating that these are the only non-consumer situations in which § 75–1.1 could be applied.... We reject defendants' contention that the North Carolina Unfair Trade Practices Act should be so limited.

*Id.* (citations omitted). *See, also, Winston Realty Co., Inc. v. G.H.G., Inc.,* 70 N.C.App. 374, 320 S.E.2d 286 (1984) (holding that the Act could be applied to an employment agency who recommended an employee even though the agency was paid by the prospective employee and had no relationship with the plaintiff); *J.M. Westall & Co., Inc. v. Windswept View of Asheville, Inc.,* 97 N.C.App. 71, 387 S.E.2d 67, 69 (holding that the Act could be applied to defendant-developer in an action by plaintiff, a supplier of goods to defendant's contractor, even though there was no official relationship between plaintiff and defendant. The court here noted that the important inquiry is "whether defendants' allegedly deceptive acts affected commerce."), *rev. denied,* 327 N.C. 139, 394 S.E.2d 175 (1990).

At the same time that the North Carolina courts were refusing to limit the Act in any real sense, they were also stating that "[t]he act is directed toward maintaining ethical standards in dealings between person engaged in business and to promote good faith at all levels of commerce." *McDonald,* 370 S.E.2d at 685. Because of the expansiveness of the Act and the lack of specific statutory provisions to address this situation, it can not be said at this time that Plaintiffs can not state a claim under the North Carolina Unfair Trade Practices Act. Defendant ABC is a business and the production of stories for its news magazine show *Prime-Time Live* is one aspect of that business.[8] Defendants' actions in this case did have an effect on commerce. Plaintiff's Unfair Trade Practices Act will not be dismissed for failure to state a claim on which relief can be granted.

Furthermore, Defendants' motion for summary judgment on this claim will not be granted. The facts of this case, taken in the light most favorable to Plaintiff is that there was fraud involved in the actions of Litt and Barnett. North Carolina case law

8. Defendants envision a parade of horribles which will result from the finding that news gathering can be a business activity.

> If this Court concludes that Food Lion's claim is cognizable, it must conclude that a journalist is involved in a "business activity." And if that is true, it follows that anything a journalist does that might be construed to be "unfair" or "having a tendency to deceive," or as "immoral" or "unethical," is subject to the statute, because the UTPA bans all such business practices. If so construed, the UTPA would effectively bar all investigative journalism that uses any form of deception. It would also outlaw any interview questions, or camera shots, or selection of sources, etc., that might be deemed "unfair."

(Defs.' Mem. In Supp. of Mot. to Dismiss Claims of Breach of Fiduciary Duty and Unfair or Deceptive Trade Practices, at 11). The Court does not anticipate anything as sweeping as Defendants fear. Indeed, North Carolina Trade Practices Act claims are viewed within the facts of a specific case. This case presents very unique facts. Not only was deception used, it was used to send ABC employees into Food Lion stores as Food Lion employees. The specific facts here and the type of deception used goes far beyond other types listed in Defendants' brief.

Defendants also claim that allowing a news organization to be sued under the Unfair Trade Practices Act would render the Act unconstitutional. Under the specific facts of this case, a news organization could be found liable under the Act and the constitution would never be implicated at all. As has long been noted by the courts of this land, the press is not free to violate laws of general applicability in order to reach its ultimate goals. *See, e.g., Cohen v. Cowles Media Co.,* 501 U.S. 663, 669–70, 111 S.Ct. 2513, 2518–19, 115 L.Ed.2d 586 (1991). In *Cohen v. Cowles Media,* the Supreme Court recognized the "well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Id.* at 669, 111 S.Ct. at 2518. Furthermore, the Supreme Court "has emphasized that '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.' " *Branzburg,* 408 U.S. at 683, 92 S.Ct. at 2657 (citing *Associated Press v. N.L.R.B.,* 301 U.S. 103, 132–33, 57 S.Ct. 650, 655–56, 81 L.Ed. 953 (1937)). The *Branzburg* Court also noted that "[i]t has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg,* 408 U.S. at 684.

holds that "[o]nce the plaintiff has proven fraud, thereby establishing prima facie a violation of chapter 75 ... the burden shifts to the defendant to prove that he is exempt from the provisions of [the Act]." *Bhatti v. Buckland,* 328 N.C. 240, 400 S.E.2d 440, 442 (1991). Defendants have not met their burden in this case.

### IV.

For the reasons stated above, Defendants' Renewed Motion to Dismiss Plaintiff's Claims of Breach of Fiduciary Duty and Unfair and Deceptive Trade Practices, or in the Alternative, for Summary Judgment is DENIED.

United States District Court, M.D. North Carolina, Winston–Salem Division.

Nov. 27, 1996.

W. Andrew Copenhaver, David A. Shirlen, Elizabeth B. McGee, Winston–Salem, NC, John J. Walsh, New York City, Richard L. Wyatt, Jr., Washington, DC, for plaintiff.

H. Hugh Stevens, Jr., Jerry S. Alvis, Katherine A. O'Connor, Raleigh, NC, Randall Turk, William Jeffress, Jr., Washington, DC, Alan W. Duncan, Greensboro, NC, for defendants.