**JACOBS v. PHYSICIANS WEIGHT LOSS CTR. OF AM., INC.**

[173 N.C. App. 663 (2005)]

KELLY K. SUGGS JACOBS AND PERSONS SIMILARLY SITUATED, PLAINTIFF V. PHYSICIANS WEIGHT LOSS CENTER OF AMERICA, INC., CHARLES E. SEKERES, CECILE HOLDEN, JOHN D. SIDERIS, PAUL C. HUNT, JEAN THOMAS, COOKIE PARKER, G.A. PARKER, HEALTHY WEIGH, INC., P.C.H. TODAY, INC., AND VIRGINIA EVELYN DOREMUS, DEFENDANTS

No. COA04-644

(Filed 18 October 2005)

**1. Fiduciary Relationship— weight loss center—retained physicians—weight loss drug prescriptions—customer's choice of pharmacy rights—breach of fiduciary duty**

A fiduciary relationship existed between customers of a weight loss center and physicians retained by the center to examine its customers and to prescribe weight loss drugs for them, and this relationship could give rise to liability by the center for breach of fiduciary duty based upon the failure of the retained physicians to disclose to the customer-patients that they had a right to obtain and fill their prescriptions at an outside pharmacy rather than through the center's designated pharmacy whether or not they had requested that they be given their prescriptions so that they could be filled at an outside pharmacy.

**2. Wrongful Interference— physician-patient relationship**

North Carolina does not recognize a cause of action for tortious interference with a physician-patient relationship.

**3. Fraud; Unfair Trade Practices— right to obtain prescriptions—failure to disclose—partial summary judgment**

Genuine issues of material fact existed in actions for constructive fraud and unfair trade practices as to whether plaintiff weight loss center customers would have exercised their right to obtain their weight loss drug prescriptions and have them filled at outside pharmacies if they had been informed of their right to do so, and the trial court erred by entering partial summary judgment for defendant as to plaintiffs who did not request their prescriptions.

**4. Pharmacists— pharmacy of choice statute—inapplicability to weight loss contracts**

The pharmacy of choice statute, N.C.G.S. § 58-51-37, governs accident and health insurance policies and similar contracts and does not apply to contracts for medical and other services such

as the contracts between defendant weight loss center and its clients which provided that the center would fill prescriptions for weight loss drugs through a pharmacy with which the center had contracted.

**5. Physicians and Surgeons— statute prohibiting referrals to certain entities—no private right of action**

The statute that prohibits health care providers from referring patients to entities in which the health care provider is an investor, N.C.G.S. § 90-406, does not provide a private right of action for clients of a weight loss center whose contracts require them to have drug prescriptions written by the center's retained physicians filled by a pharmacy with which the center has contracted.

**6. Drugs— RICO claim—weight loss center—prescription drug agreement—not sale of controlled substances**

A customer of defendant weight loss center failed to establish a RICO claim with regard to a contract requiring customers of the center to have weight loss drug prescriptions written by the center's retained physicians filled through a specific Ohio pharmacy where the evidence showed that local weight loss center franchises were paid by customers for the service of forwarding prescriptions to the Ohio pharmacy to be processed, and this evidence does not support a conclusion that defendant violated N.C.G.S. § 89-95(a)(1) by engaging in the sale of controlled substances or that defendant engaged in mail fraud or wire fraud involving the distribution of controlled substances.

**7. Class Actions— decertification of class—numerosity**

The trial court erred by decertifying the class of plaintiffs based upon the lack of numerosity where several of the trial court's summary judgment rulings as to certain of the plaintiffs have been reversed and the class remains as previously defined by another judge's order certifying the class.

**8. Appeal and Error— preservation of issues—arguments not presented to trial court**

Arguments raised for the first time on appeal regarding whether the class of plaintiffs should be decertified will not be considered by the appellate court.

**JACOBS v. PHYSICIANS WEIGHT LOSS CTR. OF AM., INC.**

[173 N.C. App. 663 (2005)]

Appeal by plaintiff and defendants from judgment entered 5 March 2004 by Judge Ben F. Tennille in Guilford County Superior Court. Heard in the Court of Appeals 12 January 2005.

*Barron & Berry, L.L.P., by Frederick L. Berry, and Clark Bloss & Wall, PLLC, by John F. Bloss, for plaintiff-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P.; by Harvey L. Cosper, Jr., and Lori R. Keeton, for defendants-appellees.*

TIMMONS-GOODSON, Judge.

Kelly Suggs Jacobs ("plaintiff") appeals an order of the trial court granting summary judgment for Physicians Weight Loss Center ("PWLC"), et al., (hereinafter referred to collectively as "defendants"), and denying her motion for summary judgment. Defendants appeal the trial court's grounds for decertifying the class of plaintiffs. For the reasons stated herein, we affirm in part and reverse in part the trial court's order.

The factual and procedural history of this case is as follows: PWLC provides services that enable weight loss, including dietary and prescription drug therapy. PWLC has North Carolina franchise operations located in Asheville, Greensboro, Jacksonville, Wilmington, and Winston-Salem. PWLC franchises contracted with physicians to examine and treat customers enrolled in its weight loss programs. Physicians under contract with PWLC prescribed drugs for PWLC customers. Pursuant to their contract with PWLC, the physicians were prohibited from providing the prescriptions directly to the patients. Instead, the prescriptions were faxed to Colonial Pharmacy in Ohio for processing. Colonial Pharmacy filled the prescriptions and mailed the drugs to the patient's residence. Customers paid the local PWLC franchise for the drug. The franchisee paid the corporate office for the cost of the drug. The corporate office paid Colonial Pharmacy for filling the prescriptions and mailing the drugs to the customers. The local franchise received the difference between what the customer paid for the prescription and the cost to the corporate office as profit.

In March 1998, plaintiff executed a contract for the purchase of a weight loss plan from defendants. The plan included prescription drug therapy. After purchasing a two-week supply of the prescription drug Merida through defendants, plaintiff learned she could reap substantial cost savings by purchasing the drug from a local pharmacy.

Plaintiff requested her prescription from the PWLC contract doctor but her request was denied pursuant to PWLC policy.

Plaintiff filed the underlying action because PWLC refused to provide her a prescription to take to an outside pharmacy. In its amended form, the complaint alleges that defendants engaged in (1) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; (2) violation of state insurance laws, specifically N.C. Gen. Stat. § 58-51-37; (3) intentional interference with fiduciary relationships; (4) constructive fraud, violation of fiduciary duty, and conversion; (5) actual fraud; (6) two violations of the Controlled Substances Act, N.C. Gen. Stat. § 90-95 and 90-108; (7) violation of the Pharmacy Practice Act; (8) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (9) illegal self referrals; (10) illegal exclusive arrangements for transmission of prescriptions; and (11) unjust enrichment. Plaintiff also filed a motion to certify the lawsuit as a class action. The trial court granted plaintiff's motion to certify the class. Subsequently, defendants filed motions for summary judgment and a motion to decertify the class of plaintiffs. Plaintiff also filed a motion for partial summary judgment.

The trial court granted partial summary judgment on the claims of constructive fraud, breach of fiduciary duty, unfair and deceptive trade practices, and intentional interference with fiduciary relationship, against plaintiff on behalf of the PWLC patients who did not ask to take their prescription to an outside pharmacy. The trial court granted full summary judgment on the claims of violation of state insurance laws, conversion, violation of the RICO Act, illegal self-referral, and unjust enrichment against the entire class of plaintiffs. The trial court granted defendants' uncontested motion to dismiss the claims pertaining to the Controlled Substances Act and actual fraud. The trial court denied plaintiff's motion for partial summary judgment and defendants' motion to decertify the class. The trial court certified this interlocutory appeal of the summary judgment order pursuant to Rule 54 of the Rules of Civil Procedure, stating "[t]here is no just reason to delay appeal of this Order, as an immediate appeal will promote judicial economy. The appeal should take place before a ruling on the claims of the remaining class members to prevent this matter from being litigated twice." Thus, the parties appeal the trial court's order.

The issues presented by plaintiff on appeal are whether the trial court erred by (I) granting partial summary judgment for defendant

against all customers who did not ask to take their prescription to an outside pharmacy; (II) granting full summary judgment for defendant against all plaintiffs on issues pertaining to insurance laws, the RICO Act, and illegal self-referrals; and (III) modifying the definition of the class. Defendants' assignments of error are discussed *infra*.

## Partial Summary Judgment

[1] Plaintiff first argues that the trial court erred by granting defendants partial summary judgment with regard to customers who did not ask to take their prescription to an outside pharmacy. We agree.

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citing *Wilmington Star News, Inc. v. New Hanover Regional Medical Center, Inc.* 125 N.C. App. 174, 178, 480 S.E.2d 53, 55, *appeal dismissed*, 346 N.C. 557, 488 S.E.2d 826 (1997)). *See also* N.C.R. Civ. P. 56(c). "A summary judgment movant bears the burden of establishing the lack of any triable issue[.]" *Schmidt v. Breeden*, 134 N.C. App. 248, 251, 517 S.E.2d 171, 174 (1999). "A defendant who moves for summary judgment may meet this burden by showing either that (1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim." *Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). "[T]he evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix*, 130 N.C. App. at 733, 504 S.E.2d at 577. Since summary judgment is a somewhat drastic remedy, the court must cautiously observe its requirements so that no party is "deprived of a trial on a genuine disputed factual issue." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

### Breach of Fiduciary Duty

First, we review the trial court's grant of partial summary judgment on the issue of breach of fiduciary duty. Plaintiff contends the trial court erred in granting partial summary judgment of this issue. We agree.

A fiduciary relationship must exist for there to be a breach of fiduciary duty. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). A fiduciary relationship

exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. [I]t extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). "[T]his Court has recognized that the relationship of patient and physician is considered to be a fiduciary one, 'imposing upon the physician the duty of good faith and fair dealing.' " *Watts v. Cumberland County Hosp. System, Inc.*, 317 N.C. 110, 116, 548 S.E.2d 879, 884 (1986) (quoting *Black v. Littlejohn*, 312 N.C. 626, 646, 325 S.E.2d 469, 482 (1985)).

In the instant case, the parties stipulated "a physician/patient relationship existed between the class members and the doctor at each PWLC franchise office who examined them and prescribed weight loss drugs for them." The trial court found, however, "[d]efendants did not owe a fiduciary duty to those plaintiffs [who did not request the prescription] because no resulting superiority occurred if a plaintiff did not request a prescription." We disagree. Plaintiff and those on whose behalf she is proceeding provided medical background and submitted to medical testing by PWLC employees and the doctors providing medical services under contract with defendants. The fiduciary relationship existed whether the customer requested a prescription or not. We conclude the relationship was a fiduciary relationship. A fiduciary has a duty to disclose all facts material to a transaction. *Stamm v. Salomon*, 144 N.C. App. 672, 680-81, 551 S.E.2d 152, 158 (2001). The evidence, viewed in the light most favorable to the nonmovant, tends to show physicians under contract with defendants failed to disclose to the patients that the patients had a right to their prescriptions. Therefore, we conclude the trial court erred in granting partial summary judgment on the issue of breach of fiduciary duty.

## Intentional Interference With A Fiduciary Relationship

[2] Next, we review the decision of the trial court to grant partial summary judgment for defendants on the issue of intentional interference with a fiduciary relationship. Plaintiff specifically argues that PWLC interfered with the relationship between physicians employed

by PWLC and their patients by not allowing the physicians to give patients a copy of their prescription to take to an outside pharmacy. Plaintiff contends the trial court erred in granting partial summary judgment on this issue. We affirm in part and reverse in part.

North Carolina does not recognize a cause of action for the tort of intentional interference with a fiduciary relationship. *Burgess v. Busby*, 142 N.C. App. 393, 405, 554 S.E.2d 4, 10 (2001). Plaintiff cites to *Cameron v. New Hanover Memorial Hospital, Inc.*, 58 N.C. App. 414, 293 S.E.2d 901 (1982) in asserting her claim against PWLC for tortious interference with a fiduciary relationship. In *Cameron*, the plaintiffs were podiatrists who filed an action against a hospital for denying plaintiffs hospital staff privileges. Among the claims alleged in the complaint was wrongful interference with the *business* relationship between plaintiffs and their patients. 58 N.C. App. at 439-40, 293 S.E.2d at 916-17. Plaintiff's reliance on *Cameron* is misplaced because the issue plaintiff raises before this Court is intentional interference with the *fiduciary* relationship between PWLC physicians and their patients. Plaintiff has not cited any case law that establishes a cause of action for interference with a fiduciary physician-patient relationship. Thus, we affirm the trial court's dismissal of the claim for intentional interference with a fiduciary relationship as to those plaintiffs who did not request their prescription. We reverse the trial court's denial of summary judgment as to the plaintiffs who requested their prescriptions.

### Constructive Fraud

[3] Plaintiff argues the trial court erred in granting partial summary judgment on the issue of constructive fraud. We agree.

To sustain a cause of action for constructive fraud, plaintiff must allege facts and circumstances (1) which created a relationship of trust and confidence, and (2) which led up to and surrounded a transaction in which defendant allegedly took advantage of his position of trust to injure the plaintiff. *Watts*, 317 N.C. at 116, 343 S.E.2d at 880 (1986). "When a fiduciary relation exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit." *Id.* (citing 37 Am. Jur. 2d *Fraud and Deceit* § 442, at 602 (1968). "Our court has held that whether plaintiff's damages were the proximate result of defendant's actions is almost always a question of fact for the jury." *Barber v. Woodmen of the World Life Ins. Society*, 95 N.C. App. 340, 345, 382 S.E.2d 830, 834 (1989) (citing *Winston Realty Co. v. G.H.G., Inc.*, 70 N.C.

App. 374, 320 S.E.2d 286 (1984), *affirmed,* 314 N.C. 90, 331 S.E.2d 677 (1985)).

In the instant case, the trial court concluded:

> The elements of constructive fraud require the Court to again turn to the issue of injury to plaintiff caused by PWLC. . . . A plaintiff did not incur an actual injury unless the patient requested, and a PWLC physician refused to provide, a prescription. A patient that entered into a contract to receive medicine at a higher price, not availing himself of cost savings of an outside pharmacy, assented to the terms offered by PWLC. The patient had the right to procure the medicine and the physician services at any cost that he chose so long as a disparity in bargaining power did not coerce his assent.

(citations omitted). The trial court's reasoning assumes those who did not request their prescription knew of their entitlement to their prescriptions—a fact defendants failed to disclose—and waived their right to their prescriptions. There is no evidence to support that assumption. The evidence of record indicates the physicians failed to disclose the fact that the patients had a right to their prescriptions. If the clients did not know they were entitled to their prescriptions under the law and would have sought to take their prescriptions to another pharmacy had they known of their entitlement, they suffered actual injury. Clients who did not know of their entitlement to their prescription but who would have used the pharmacy services provided through defendants anyway did not suffer injury. These are facts to be determined by the jury. Therefore, we reverse the trial court's grant of partial summary judgment on the claim of constructive fraud.

### Unfair and Deceptive Trade Practice

Next, we consider whether the trial court erred in granting partial summary judgment against those clients who did not request their prescriptions as to the claim under the Unfair and Deceptive Trade Practice Act ("UDTPA").

"To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff[.]" *Spartan Leasing v. Pollard,* 101 N.C. App. 450, 460, 400 S.E.2d 476 482 (1991) (citing N.C. Gen. Stat. § 75-1.1 and 75-16). Actual injury includes "the loss of

the use of specific and unique property, the loss of any appreciated value of the property, and such other elements of damages as may be shown by the evidence." *Belcher v. Fleetwood Enterprises*, 162 N.C. App. 80, 85, 590 S.E.2d 15, 18-19 (2004) (citing *Poor v. Hill*, 138 N.C. App. 19, 34, 530 S.E.2d 838, 848 (2000)).

In the instant case, the trial court found:

The withholding of prescriptions by PWLC amounted to unethical conduct and contravened public policy, thus overriding the freedom of contract argument. . . . The PWLC policy was that physicians were not to give patients prescriptions to fill at outside pharmacies. The problem with the customer contract and the policy of withholding prescriptions taken together is that such practices mandated a physician practice—the refusal to provide a prescription—that violated medical ethics. The withholding of prescriptions, therefore, is unethical conduct and satisfies the fairness prong, as PWLC encouraged physicians to treat their patients in a manner that amounted to an unfair practice.

The trial court also found the claim was sufficient to satisfy the second essential element of an unfair and deceptive practice claim. The trial court stated:

The claim against PWLC also meets the second prong requiring an unfair or deceptive act that affects commerce. Courts broadly interpret commerce under the UDTPA as a business activity of any kind limited only by express exemptions within the statute. *Bhatti v. Buckland*, 328 N.C. 240, 245-46, 400 S.E.2d 440, 443-44 (1991). The exchange of money for services to facilitate weight loss constitutes a business activity. No exemption applies, as none of defendants are physicians and are not protected by the learned profession exemption under the statute.

The trial court, however, concluded those clients who did not request their prescriptions were not injured and therefore, plaintiff failed to meet the third essential element of a claim for unfair and deceptive trade practices. Plaintiff contends the trial court erred in its analysis related to damages. We agree.

At a minimum, a jury question exists as to damages. Our analysis of the issue of damages with regard to plaintiff's claim for constructive fraud, *supra*, is also applicable to the issue of damages related to plaintiff's claim under the Unfair and Deceptive Trade Practices Act. For the reasons stated therein, we reverse the order granting

partial summary judgment as to the plaintiffs who did not request their prescriptions.

## Full Summary Judgment

Plaintiff next argues that the trial court erred by granting defendants full summary judgment on plaintiff's claims based on the pharmacy of choice statute, the RICO Act, and illegal self-referrals.

### N.C. Gen. Stat. § 58-51-37

[4] Plaintiff assigns error to the trial court's grant of summary judgment for defendants on plaintiff's claim that defendants violated N.C. Gen. Stat. § 58-51-37. We disagree.

Chapter 58 of the General Statutes governs the insurance industry. Article 51 of chapter 58 specifically governs the provisions of health, accident, and death insurance policies or contracts in this State. N.C. Gen. Stat. § 58-51-37(a) (2003) provides:

> This section shall apply to all health benefit plans providing pharmaceutical services benefits, including prescription drugs, to any resident of North Carolina. . . . This section shall not apply to any entity that has its own facility, employs or contracts with physicians, pharmacists, nurses, and other health care personnel, and that dispenses prescription drugs from its own pharmacy to its employees and to enrollees of its health benefit plan; provided, however, this section shall apply to an entity otherwise excluded that contracts with an outside pharmacy or group of pharmacies to provide prescription drugs and services.

A "health benefit plan" is defined in N.C. Gen. Stat. § 58-50-110(11) as "any accident and health insurance policy or certificate; nonprofit hospital or medical service corporation contract; health, hospital, or medical service corporation plan contract; HMO subscriber contract; plan provided by a MEWA or plan provided by another benefit arrangement, to the extent permitted by ERISA, subject to G.S. 58-50-115."

N.C. Gen. Stat. § 58-51-37(c)(4) provides that:

> The terms of a health benefit shall not: . . . impose a monetary advantage or penalty under a health benefit plan that would affect a beneficiary's choice of pharmacy. Monetary advantage or penalty includes higher copayment, a reduction in reimbursement for services, or promotion of one participating pharmacy over another by these methods.

In the instant case, plaintiff contends defendants' contract with class members to provide medical services was a "health benefit plan" governed by N.C. Gen. Stat. § 58-51-37. We disagree.

N.C. Gen. Stat. § 58-51-37, the pharmacy of choice statute, governs accident and health insurance policies and similar contracts. The statute does not apply to contracts for medical and other services such as the contracts between defendants and their clients. Thus, we affirm the trial court's grant of summary judgment for defendants on plaintiff's claim for a violation of N.C. Gen. Stat. § 58-51-37.

## Illegal Self-Referrals

[5] Plaintiff also argues that the trial court erred in holding there is no private cause of action under N.C. Gen. Stat. § 90-406. We disagree.

N.C. Gen. Stat. § 90-406 prohibits health care providers from referring patients to entities in which the health care provider is an investor. The statute further provides:

(b) No invoice or claim for payment shall be presented by any entity or health care provider to any individual, third-party payer, or other entity for designated health care services furnished pursuant to a referral prohibited under this Article.

(c) If any entity collects any amount pursuant to an invoice or claim presented in violation of this section, the entity shall refund such amount to the payor or individual, whichever is applicable, within 10 working days of receipt.

N.C. Gen. Stat. § 90-406 (2003).

"Health care provider" is any person who, pursuant to Chapter 90 of the General Statutes, is licensed, or is otherwise registered or certified to engage in the practice of any of the following: medicine, dentistry, optometry, osteopathy, chiropractic, nursing, podiatry, psychology, physical therapy, occupational therapy or speech and language pathology and audiology.

N.C. Gen. Stat. § 90-405(7). The penalties for violation of the statute are outlined in N.C. Gen. Stat. § 90-407. The statute provides for disciplinary action by the applicable board that licenses, registers or certifies the professional practice of the health care provider. The statute also provides for civil penalties as follows:

(b) Any health care provider who refers a patient in violation of G.S. 90-406(a), or any health care provider or entity who

(1) Presents or causes to be presented a bill or claim for service that the health care provider or entity knows or should know is prohibited by G.S. 90-406(b), or

(2) Fails to make a refund as required by G.S. 90-406(c),

shall be subject to a civil penalty of not more than twenty thousand dollars ($20,000) for each such bill or claim, to be recovered in an action instituted either in Wake County Superior Court, or any other county, by the Attorney General for the use of the State of North Carolina..

N.C. Gen. Stat. § 90-407 (2003).

We note initially that plaintiff concedes "defendants are not licensed within the meaning of § 90-405(7)[.]" Plaintiff argues defendants "hold themselves out to the public as health care providers and . . . deliver health care services to their patients. . . . Accordingly, the defendants were acting as health care providers under § 90-405(7)." The statute governs "health care providers" as defined within the statute. Because plaintiff concedes the defendants are not health care providers as defined in the statute, summary judgment was appropriate. In addition, "our case law generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339 n.2, 511 S.E.2d 41, 44 n.2 (1999). The legislature did not provide for a private right of action with regard to violations of § 90-406. Instead, the legislature provided for disciplinary action by the applicable licensing board and civil penalties in actions initiated by the Attorney General. We hold there is no private right of action for violations of § 90-406. Therefore, we affirm the order granting summary judgment on plaintiff's claim for violations of N.C. Gen. Stat. § 90-406.

## Racketeer Influenced and Corrupt Organizations Act

[6] Plaintiff next argues that the trial court erred by concluding that plaintiff failed to establish a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, N.C. Gen. Stat. § 75D-1, et seq. We disagree.

RICO generally prohibits any "pattern of racketeering activity." N.C. Gen. Stat. § 75D-4(a)(1) (2003). Racketeering activity is defined in pertinent part as follows:

(1) "Racketeering activity" means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent under the following laws of this State:

    a. Article 5 of Chapter 90 of the General Statutes of North Carolina relating to controlled substances and counterfeit controlled substances;

    . . . .

(2) "Racketeering activity" also includes the description in Title 18, United States Code, Section 1961(1).

N.C. Gen. Stat. § 75D-3(c) (2003).

Plaintiff argues that

the summary judgment evidence establishes that defendants, that [sic] throughout the class period, engaged in and/or participated in an enterprise that engaged in multiple acts of racketeering activity including:

(1) sales of controlled substances, proscribed by G.S. § 90-95(a)(1);

(2) mail fraud, in violation of 18 U.S.C. § 1341, using the U.S. mail illegally to distribute controlled substances to plaintiffs; and

(3) wire fraud, in violation of 18 U.S.C. § 1343, in using fax machines and electronic credit card transmissions to accomplish their illegal purposes.

In support of the allegations of a violation of the RICO statute, plaintiff tendered evidence of the following facts: The PWLC customers who contracted for weight loss services that included prescription drugs paid the local franchise for the drugs. The prescriptions were faxed to Colonial Pharmacy in Ohio for processing. Colonial Pharmacy filled the prescriptions and mailed the drugs to the patient's residence. The local franchise paid the corporate office for the costs of the drug. The corporate office paid Colonial Pharmacy for filling the prescriptions and mailing the drugs to patients in North Carolina. The local franchise received the difference between what the customer paid for the prescription and the cost to the corporate office. Plaintiff's tender of evidence on defendants' violation of N.C. Gen. Stat. § 90-95(a)(1) is not sufficient to sup-

port the claim. The evidence viewed in the light most favorable to plaintiff supports the conclusion the local franchisees were paid by customers for the service of forwarding prescriptions to Colonial Pharmacy to be processed. The facts do not support the conclusion defendants violated N.C. Gen. Stat. § 90-95(a)(1) by engaging in the sale of a controlled substance. Additionally, we note the trial court dismissed plaintiff's claim under N.C. Gen. Stat. § 90-95(a)(1) without objection by plaintiff. Thus, plaintiff's argument that defendants engaged in the sales of controlled substances, mail fraud by using the United States mail illegally to distribute controlled substances, and wire fraud in using fax machines and electronic credit card transmissions to accomplish their purposes fails. Because plaintiff's controlled substances argument fails, plaintiff "has failed to allege conduct sufficient to support a finding that these . . . [d]efendants were 'engaged in a pattern of racketeering activity.' " *Delk v. Arvinmeritor, Inc.*, 179 F. Supp. 2d 615, 627-28 (W.D. N.C. 2002). For these reasons, we conclude that the trial court did not err by granting summary judgment for defendants on this issue.

**Decertifying the class based on lack of numerosity**

[7] Next, plaintiff argues that the trial court erred by decertifying the class of plaintiffs based on the lack of numerosity. We agree.

It is well settled that "ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Motor Co.*, 281 N.C. 496, 189 S.E.2d 484 (1972). "However, in an appropriate context a superior court judge has the power to modify an interlocutory order entered by another . . . ." *Dublin v. UCR, Inc.*, 115 N.C. App. 209, 219, 444 S.E.2d 455, 461 (1994). Therefore, interlocutory orders may be modified due to changed circumstances.

In the instant case, Judge Morgan entered an order in which he made the following findings:

3. There are common issues of law which include whether any of the defendants' drug practices constitute an impermissible interference with an individual's right to buy prescription drugs at a lower available price and/or otherwise constitute violations of law as alleged in the Complaint. The Court makes no ruling on the validity and sufficiency of plaintiff's claims and has not ruled on defendants' dispositive motions, which were pending at the time of the hearing on plaintiff's motion for class certification.

4. Common issues of fact and law predominate over individual issues asserted by defendants, such as the nature of any alleged oral fraudulent or other misrepresentations made by a defendant concerning drug prices and the means by which Kelly Suggs or prospective class members could obtain their prescription drugs, whether and to what extent Kelly Suggs or prospective class members relied upon any alleged fraudulent or other misrepresentation, or the extent to which, if any, Kelly Suggs or prospective class members may have been damaged.

5. The plaintiff will fairly and adequately represent the Class.

6. The members of the Class are so numerous that it would be impractical to join them all and thus, the numerosity requirement has been met.

7. The Class action is superior to any other available method of resolving this dispute.

Based on the findings, Judge Morgan entered an order certifying a class "defined as all persons who purchased prescription drugs from the defendants in North Carolina from June 20, 1995 to the date of this Order."

"The order entered by Judge [Morgan] was interlocutory. . . . Thus, a subsequent judge could modify the order for circumstances which changed the legal foundation for the prior order." *Dublin*, 115 N.C. App. at 220, 444 S.E.2d at 461. The changed circumstance relied upon by Judge Tennille was the modification of the class based on a new definition of the class as a result of his summary judgment order.

The trial court concluded

[t]he summary judgment order alters the class by limiting it to those plaintiffs who did request prescriptions for use at other pharmacies. Plaintiffs that did not request prescriptions for use elsewhere and to whom PWLC did not refuse such requests do not have claims as a matter of law. . . . Thus, the class definition has been modified to consist of a class of plaintiffs who were denied their written prescriptions when requested. The modification results from the summary judgment ruling.

The trial court then ordered: "The class definition is modified to consist only of plaintiffs who were denied their written prescriptions when requested[.]" After redefining the class, the trial court issued an order decertifying the class because "[t]he Order granting summary

judgment leaves only the class representative with a claim pending against defendants. The existence of only one plaintiff clearly does not create an impractical situation under Rule 23."

Because we have reversed several of the trial court's summary judgment rulings as to those plaintiffs who did not request their prescriptions, the class remains as previously defined. Therefore, we reverse the trial court order decertifying the class.

**Defendant's Cross Appeal**

[8] Defendants have filed a cross-appeal asking this Court to affirm the trial court's order decertifying the class asserting alternative bases for the trial court's action. Specifically, defendants argue the trial court's order decertifying the class can be supported in law by the following bases: (I) plaintiff is not a suitable representative of the class; (II) individual issues of law or fact predominate over common issues of law or fact among the plaintiffs; and (III) a class action is not the superior method for adjudicating this controversy.

Defendants raise these arguments for the first time on appeal. On 17 April 2003, defendants filed a motion to decertify the class and in the motion, stated the following: "Defendants request such decertification based on the change in legal circumstances that has occurred since the class certification order was originally entered." The trial court denied defendants' motion in the same order granting summary judgment to defendant and decertifying the class entered 3 March 2004. There is nothing in the record to indicate defendant presented the alternative grounds for decertifying the class to the trial court. "It is axiomatic with us that a litigant must be heard here on the theory of the trial below and he will not be permitted to switch horses on his appeal. Nor may he ride two horses going different routes to the same destination." *Graham v. Wall*, 220 N.C. 84, 94, 16 S.E.2d 691, 697 (1941). Therefore, defendants' assignments of error are overruled.

Affirmed in part and reversed in part.

Judges HUDSON and STEELMAN concur.