IN THE SUPREME COURT OF NORTH CAROLINA

No. 66A25

Filed 20 March 2026

GEORGE ROBERT ARMISTEAD, JR., MADISON ARMISTEAD, GREG RHODES, and WILLIAM YATES, individually and on behalf of all others similarly situated

v.

COUNTY OF CARTERET

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order on plaintiffs' motion for class certification entered on 19 August 2024 by Judge R. Kent Harrell in Superior Court, Carteret County. Heard in the Supreme Court on 10 September 2025.

*Milberg Coleman Bryson Phillips Grossman, PLLC, by Martha A. Geer, Scott C. Harris, James R. DeMay, and John Hunter Bryson; and Lewis & Roberts, PLLC, by James A. Roberts III and Matthew D. Quinn, for plaintiffs-appellees.*

*Womble Bond Dickinson (US) LLP, by Sonny S. Haynes, for defendant-appellant.*

DIETZ, Justice.

Carteret County does not provide trash and recycling services to county residents. Instead, it offers access to small waste collection sites spread across the county. These sites have dumpsters or other waste receptacles. The county also provides access to a landfill.

For years, Carteret County funded these disposal sites by charging fees to county property owners. Plaintiffs brought this class action lawsuit alleging that the county's fees are unlawful because the fees cannot be charged to those who never used

the disposal sites and cannot be charged to those who hired a private waste collection service to handle their trash and recycling. Plaintiffs also alleged that the revenue collected from these fees exceeded the cost of operating the sites in violation of state law.

After years of pretrial discovery, the trial court held a class certification hearing and ultimately rejected one of plaintiffs' four proposed classes but certified the other three.

As explained below, we affirm the trial court's certification order. The key issue in this case is whether it is possible to ascertain the identity of class members who hired private waste collection services. We hold that it is. There are only a handful of firms offering these services, and the customer lists of those firms offer a feasible, objective means of ascertaining class membership. In addition, on the record before us, the challenged classes do not present predominance or superiority issues.

The county also contends that, as the facts and law develop in this case, additional ascertainability, predominance, or superiority issues could emerge. That does not bar class certification now. Should circumstances change as the case progresses, the county can move to modify or decertify the class.

**Facts and Procedural History**

Plaintiffs are property owners in Carteret County. Like many counties, Carteret County does not have county-wide trash and recycling services. Instead, the county provides twelve waste disposal sites that the parties refer to as "Green Box

sites," apparently because of the color of the dumpsters or other receptacles at these sites. The county also provides access to a landfill that is operated by a regional authority serving Carteret County and other nearby coastal counties.

By statute, counties may charge several different types of fees for solid waste services. N.C.G.S. § 153A-292(b) (2025). First, a county "may impose a fee for the collection of solid waste." *Id.* As noted above, Carteret County does not offer its own waste collection services and therefore does not charge this fee.

Second, a county may "impose a fee for the use of a disposal facility provided by the county." *Id.* The parties refer to this as a "use fee." This fee "may be imposed only on those who use the facility" and "may not exceed the cost of operating the facility." *Id.*

Third, a county may charge an "availability fee" to "all improved property in the county that benefits from the availability" of a county waste disposal facility. *Id.* The county cannot charge this fee to property owners "served by a private contractor who disposes of solid waste collected from the property in a disposal facility provided by a private contractor that provides the same services as those provided by the county disposal facility." *Id.* As with the use fee, the "fee for availability may not exceed the cost of providing the facility." *Id.*

At the times relevant to this lawsuit, Carteret County enacted ordinances authorizing two separate waste disposal fees that the county believed were authorized by these statutes. Carteret County, N.C., Code of Ordinances, § 14-56

(2007) (amended 2024). First, the county charged a "Green Box Fee" to "each residential household in the county which does not have household waste collection service." *Id.* This fee was "intended to recover the costs of disposing of solid waste from households utilizing the county provided solid waste and recycling collection sites." Carteret County Code of Ordinances, § 14-57 (repealed 2024). Since 2017, the Green Box Fee has ranged from $157 to $165 per year.

The county also charged a "Landfill Fee" that was "based upon optional use privileges at county solid waste convenience sites." Carteret County Code of Ordinances, § 14-56 (2007) (amended 2024). This fee was $15 per year.

In 2020, plaintiffs brought this putative class action lawsuit alleging that the Green Box Fees and Landfill Fees charged to certain county property owners are unlawful and must be refunded. Specifically, plaintiffs alleged that the county unlawfully charged the Green Box Fee to people who never used a Green Box site and unlawfully charged both the Green Box Fee and Landfill Fee to people who had private waste collection services. Plaintiffs also alleged that the fees the county charged exceeded the cost of operating these county waste disposal sites.

More than three years after filing the complaint, and after extensive discovery, plaintiffs moved to certify four proposed classes. The trial court declined to certify the first proposed class, labeled the "Green Box Fee/Failure-to-Use Class." This class concerned plaintiffs' allegation that the county charged the Green Box Fee to people who never used a Green Box disposal site in violation of N.C.G.S. § 153A-292(b). The

trial court concluded that determining whether each proposed class member "did or did not use a county-provided waste disposal unit" would "predominate over the common issue" for the class.

The trial court certified the other three classes, which involved plaintiffs' allegations that the county illegally charged the Green Box Fee and Landfill Fee to people with private waste collection services, in violation of both N.C.G.S. § 153A-292(b) and its own ordinance, and that all the fees exceeded the cost to operate the waste disposal sites in violation of N.C.G.S. § 153A-292(b).

The county appealed the trial court's class certification order directly to this Court as provided by N.C.G.S. § 7A-27(a)(4). Plaintiffs did not cross-appeal the trial court's decision not to certify the first proposed class, and that issue is not before us.

## Analysis

### I. Class certification criteria

The county challenges the trial court's certification order on multiple separate grounds. We therefore begin our analysis by briefly summarizing the legal standard for class certification. "As a threshold matter, the party seeking class certification bears the burden to show that a proper class exists, meaning the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 113 (2025) (cleaned up). "Beyond this threshold requirement, the party seeking class certification also must satisfy a

number of other certification criteria" designed to protect the interests of the absent class members, such as notice and adequacy of representation. *Id.* These legal criteria for class certification are questions of law that we review de novo. *Empire Contractors, Inc. v. Town of Apex*, 388 N.C. 552, 556–57 (2025).

"Once these legal prerequisites are met, the trial court may, in its discretion, certify a class." *Jackson*, 388 N.C. at 113. "In evaluating whether class certification is appropriate, the trial court should consider whether a class action is superior to other available methods to adjudicate the controversy and whether the class action is likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results." *Id.* The court also considers whether the class mechanism is "efficient and economically reasonable" given the administrative costs and the likely recovery for individual claimants. *Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 781 (2024). Because these final factors for class certification are more subjective than the legal prerequisites, trial courts have broad discretion when assessing them. *Empire Contractors*, 388 N.C. at 557. On appeal, we review these factors solely for abuse of discretion. *Id.* With this standard of review in mind, we turn to the county's arguments against class certification.

## II. Ascertainability

The county first argues that two of the classes certified by the trial court—the "Green Box Fee/Waste Collection Class" and the "Landfill Fee/Waste Collection Class"—cannot be certified because the class members are not ascertainable. The

class definitions for these two classes apply only to people who paid either the Green Box Fee or the Landfill Fee but who used private waste collection services. According to the county, the parties "do not know how many taxpayers had waste collection services during the proposed class period." Thus, the county argues, no one can identify the members of these two classes.

This argument concerns a prerequisite for class certification known as "ascertainability." This class prerequisite, like the other legal criteria for class certification described above, is "designed to protect the absent class members." *Empire Contractors*, 388 N.C. at 556. In particular, the ascertainability requirement protects the absent class members' right to notice. *Cf. Surgeon*, 385 N.C. at 777. All class members are bound by the judgment obtained by the named plaintiffs. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996). Thus, the trial court cannot certify a class unless it is "possible to provide sufficient notice to all putative class members." *Empire Contractors*, 388 N.C. at 557. Without that notice, due process does not permit a judgment that binds the absent parties. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 283 (1987). This is the source of our state's ascertainability requirement: To ensure that class members receive the required notice, the trial court must confirm that there is a feasible, objective way to identify who those class members are.

Importantly, ascertaining the members of the class cannot be done in a manner that defeats other legal criteria for class certification. For example, if class members

-7-

cannot be identified without "separate evidence for each class member and then separate resolution by a factfinder," the ascertainability requirement would not be satisfied because the identification process would devolve into "a series of mini-trials that would dwarf the adjudication of the common issues." *Empire Contractors*, 388 N.C. at 558, 560 (cleaned up). This, in turn, would defeat the predominance prong of class certification because the common issues among class members would no longer predominate the proceeding. Instead, the predominant part of the litigation would be figuring out who is a member of the class. *Id.*

The trial court's reasoning concerning the first proposed class in this case is an example of a proper ascertainability analysis. That proposed class applied to people who "paid a Green Box Fee" to the county but "did not use a Green Box site." In other words, this class covers anyone who was charged the fee to use the county's "Green Box" disposal sites but never actually visited one of those disposal sites to throw out any trash or recycling. Plaintiffs argued that this class could be ascertained by sending notice to every person who paid the Green Box Fee and then permitting prospective class members to self-identify by filing "affidavits asserting that they paid the fee but never used the Green Box."

The trial court concluded that this self-identification process would cause the case to "devolve into individualized mini trials, including the need for discovery, to determine if the claimant in fact did or did not use a county-provided waste disposal unit despite having no private waste collection service." This, the court explained,

would mean the common issues in the class would no longer predominate, defeating the legal criteria for class certification.

This analysis is correct and no party challenges it on appeal. But the county argues that the trial court erred by failing to apply the same analysis to the next two proposed classes, which involve people who hired private waste collection services. The county argues that plaintiffs "do not know how many taxpayers had waste collection services during the proposed class period" and "waste collection services can change on an annual basis and can change when properties are transferred from one owner to another in any given year." Thus, the county argues, identifying the members of these two classes will require the same sort of fact-intensive investigation that prevented certification of the first proposed class.

This argument fails because of *how* the fact issues for these two classes can be resolved. Unlike the first proposed class, which required individualized determinations to identify each class member, the latter two classes can be identified efficiently and objectively on a class-wide basis. Specifically, after the opportunity for extensive discovery on this issue, the parties have only identified a handful of private waste collection services operating in Carteret County. At oral argument, plaintiffs acknowledged that they obtained the business records of these private firms during discovery and asserted that the lists can be used to identify the class members.

The parties did not include those customer lists in the record on appeal, leaving us with no way to evaluate them. We must therefore presume that these customer

lists support the trial court's ascertainability determination. *See Nicholson v. Thom*, 236 N.C. App. 308, 325 (2014). If, as this case moves to the notice phase of class certification, the customer lists prove insufficient to identify and notify the class members, the county can move to decertify the class. *See, e.g.*, *Jacobs v. Physicians Weight Loss Ctr. of Am., Inc.*, 173 N.C. App. 663, 677–78 (2005).

Moreover, we emphasize that the county is not required to accept the accuracy of these business records, just as it is not required to take class members at their word in affidavits. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). The county can investigate these businesses and make any appropriate challenges to the truthfulness of their records. But even if fact disputes arise over the accuracy of the customer lists, those issues would not predominate the case in the same way that the class member affidavits would. Instead, because of how few firms offer private waste collection services in the county, those fact disputes could be resolved without overshadowing the core, common issues for all class members.

Simply put, the customer lists provide an objective means of ascertaining class membership, and any fact disputes concerning those lists can be resolved efficiently on a class-wide basis. Accordingly, the trial court did not err by determining that these two proposed classes were ascertainable.

In a few stray sentences in its brief, the county also points to two other potential ascertainability issues. First, the county argues that the text of the applicable ordinances requires anyone who uses a Green Box site to pay the Green

Box Fee, even if they also use a private waste collection service. This means that people who typically rely on their private waste collectors but occasionally use the Green Box site—for example, during a holiday when they accumulated too much trash to wait for collection day—would not be entitled to a refund of the Green Box Fee. The county contends that separating these people from the rest of the class creates individualized ascertainability issues as well as other class certification problems.

Second, the county contends that its ordinance permits it to collect the challenged Green Box Fee upfront so long as the county provides a refund to anyone who submits proof of private waste collection services later. The county argues that assessing whether class members submitted the necessary refund information likewise creates ascertainability issues as well as issues with other certification requirements.

The flaw in these arguments is that they concern the merits of plaintiffs' claims. Plaintiffs do not agree with the county's interpretation of its ordinances. In plaintiffs' view, the ordinances prohibit the county from collecting a Green Box Fee from *anyone* who uses private waste collection services, regardless of whether those people ever use a Green Box site. Likewise, plaintiffs contend that the ordinances do not permit the county to collect these fees upfront and put the burden on the fee payer to submit documentation and obtain a refund later. As a result, the county's arguments on these class certification issues cut to the heart of some of the key legal

issues in this case.

Ordinarily, merits questions in class certification proceedings "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Surgeon*, 385 N.C. at 781–82. Thus, it might be appropriate to examine these merits issues at the class certification stage solely to assess the certification criteria. But when doing so, these merits issues are subject to the same appellate preservation requirements as everything else. N.C. R. App. P. 10(a)(1). Here, we are not confident that these merits issues were presented to the trial court and ruled upon below as required to preserve them for appellate review.

The hearing transcript indicates that both parties expressed their intent to pursue cross-motions for summary judgment on the merits *after* the court ruled on the class certification question. Moreover, at various points during the hearing, the trial court emphasized that it was reluctant to get "more into the substance of the claims as opposed to the identification of the class." Then, when addressing whether the law permitted the county to collect the fees upfront but refund them upon proof of private waste services, the trial court directly responded, "That's another one of those kind of arguments for another day in the sense that I would expect I'll probably hear from you again on that issue when we get to summary judgment." The county did not assert that the trial court must make a ruling on these issues as part of the

certification analysis and did not object when the court declined to do so.

Ultimately, the trial court's class certification order did not address these questions about the meaning of the county's ordinances and their interplay with the enabling statutes. Because these questions go to the heart of the merits of plaintiffs' claims, we are reluctant to rule on them now—particularly where the county did not "obtain a ruling" from the trial court on the issue as required by the Rules of Appellate Procedure and neither party devoted much attention to these issues in their briefing to us. *Id.* Accordingly, we leave these issues for further proceedings in the trial court.

## III.  Predominance

The county next argues that the third proposed class does not meet the certification criteria because individualized issues predominate over the common ones.

This third proposed class, called the "Landfill Fee/Waste Collection" class, alleges that the county's Landfill Fee violated N.C.G.S. § 153A-292(b). This statutory provision permits a county to charge an "availability fee" to property owners to fund a "disposal facility provided by the county." *Id.* But the statute prohibits counties from charging this fee to property owners who hire private waste collection using a private facility that offers "*the same services* as those provided by the county disposal facility." *Id.* (emphasis added).

The county argues that "the determination of whether the services provided by any of these companies are the 'same services' as those provided by the County

-13-

disposal facility requires individualized inquiries into the provisions of the service contracts and potentially multiple contract analyses per property, particularly in cases where the waste collector or the service contract has changed over time." These individualized issues, the county argues, would predominate over the common issues in the case.

This argument fails because it mischaracterizes common issues as individualized ones. To be sure, this "same services" issue is likely to be a key fact issue in this case. But it is not an issue that is individualized to each class member. There could be many thousands of class members; the parties have identified only a handful of private waste collection firms.

Because there are only a few private firms, there will be—at most—only a few private disposal facilities to examine. Indeed, in its brief, plaintiffs point to deposition testimony from a county employee indicating that all county waste services, both private and public, are taken to facilities operated by a regional waste management authority that jointly serves Carteret County and several of its neighboring coastal counties. In other words, plaintiffs believe these private services are not just offering comparable services at their facilities, they are literally offering the same services.

Now, to be fair to the county, this is a fact question that will need to be resolved either at summary judgment or at trial. But the trial court correctly concluded that, on the current record, this fact question will not involve numerous individualized inquiries.

In sum, the county has not established that there are individualized fact issues that will predominate over common issues for the third proposed class. Instead, the county has simply highlighted a shared factual issue among class members that is amenable to resolution through a class action. Accordingly, the trial court did not err by concluding that plaintiffs' third proposed class satisfied the predominance prong of class certification.

## IV.    Superiority of the class action mechanism

Finally, the county argues that a class action is not the superior method of adjudicating the claims in the fourth proposed class. That class, which the parties label the "Cost-to-Operate" class, alleges that the county collected more in fees than it cost to operate its waste facilities. Plaintiffs allege that this overcollection violates N.C.G.S. § 153A-292(b), which prohibits counties from charging fees that exceed the "cost of operating" the facilities. *Id.*

As noted above, once the legal prerequisites to class certification are met, the trial court should evaluate whether the class action mechanism is superior to other available methods of adjudication. *Surgeon*, 385 N.C. at 777. Importantly, this superiority analysis is not a legal question. It involves a more subjective component and is therefore "left to the trial court's discretion." *Empire Contractors*, 388 N.C. at 557.

Here, the county argues that the trial court abused its discretion by failing to recognize that, if any single plaintiff prevails on a cost-to-operate claim, the county

would be obligated to issue a refund to *everyone* who paid the illegal fees, not just to that plaintiff. Thus, the county argues, a class action cannot be superior to an individual action by the named plaintiffs because the result will be the same either way.

To support this argument, the county relies on an unpublished Court of Appeals opinion. *See Manning v. Halifax County*, No. COA03-1118 (N.C. Ct. App. Sept. 7, 2004) (unpublished). That opinion, of course, is not precedential. Moreover, the holding that the county identifies in *Manning* is, at best, an implied one.

But even assuming the county's position is correct, that would not compel the trial court to deny class certification in this case. Class actions are designed as "a means for potential litigants with valid legal claims to have those claims aggregated in an efficient and economically reasonable manner." *Surgeon*, 385 N.C. at 781 (cleaned up). "The entire notion of class actions is grounded in this concept of efficiency." *Id.*

Here, it was well within the trial court's sound discretion to conclude that joining all fee payers together in a class action is superior to the alternative because of efficiency. Nothing in that initial, individual lawsuit proposed by the county would prevent others from filing similar suits. Thus, there could be "a multiplicity of suits or inconsistent results"—important concerns that underpin the existence of class action litigation. *Crow*, 319 N.C. at 284. Moreover, it is arguably more efficient to identify and bring all fee payers together now, rather than relying on the county to

locate them later. If the county were, shall we say, less than vigorous in tracking down those entitled to a refund, it could lead to a stream of future lawsuits that the class mechanism could have avoided. Simply put, the trial court's superiority analysis reflects a consideration of important efficiency issues that are at the core of the class action process. The court's analysis is a reasoned one and not an abuse of discretion.

## Conclusion

For the reasons explained above, we affirm the trial court's class certification order.

AFFIRMED.